**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LOGAN DEIVERT,<br><br>Plaintiff,<br><br>v.<br><br>ANN ZARTMAN and BOROUGH OF NORTHUMBERLAND,<br><br>Defendants. | CIVIL ACTION NO. 4:23-CV-01964<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Presently before the Court is a motion filed by Defendants Ann Zartman ("Zartman") and the Borough of Northumberland ("the Borough") (collectively, "Defendants"). (Doc. 10). On November 28, 2023, Plaintiff Logan Deivert ("Deivert") filed a complaint against Defendants, asserting claims of wrongful discharge and retaliation in violation of the First Amendment and Pennsylvania state law. (Doc. 1). For the following reasons, Defendants' motion to dismiss shall be **DENIED**. (Doc. 10).

## I. BACKGROUND AND PROCEDURAL HISTORY

The following background and factual summary are derived from Deivert's complaint. (Doc. 1). The Borough is a municipality located in Northumberland County, Pennsylvania and a Political Subdivision of the Commonwealth of Pennsylvania organized as a Borough. (Doc. 1, ¶ 3). Zartman is an individual, who at all times relevant to this action, was Borough Manager and tasked with "establish[ing] all policies and procedures for personnel hiring, promotion, and terminations within the Borough and on behalf of the Borough." (Doc. 1, ¶ 2). On or before May 22, subject to a probationary period, Deivert applied to and was hired for a job at the Borough to work as a laborer and a driver in the Streets Department. (Doc. 1, ¶ 8). In the application, Deivert truthfully responded "no" to a question asking whether

Deivert had ever been convicted of a felony. (Doc. 1, ¶ 9). Deivert completed his application in the presence of Supervisor David Johnson, who personally knew Deivert and was aware of several misdemeanor and summary offenses in Deivert's past. (Doc. 1, ¶ 11).

On May 22, 2023, Deivert began working in the Borough's Streets Department performing labor and driving duties. (Doc. 1, ¶¶ 8, 11). According to Deivert, he performed well during his probationary employment, which he believed he had completed in late August or early September 2023. (Doc. 1, ¶¶ 12-13). In late August, Deivert expressed interest in joining the Union that represented employees in the Borough's Streets Department and began to fill out paperwork to join the Union. (Doc. 1, ¶ 13). Deivert alleges that "Defendants have an acrimonious and openly antagonistic relationship with the Union, Teamster Local 764, Milton, Pennsylvania, its members, and officials." (Doc. 1, ¶ 14). On August 28, 2023, a Union official "met with [] Zartman and informed her that Plaintiff was joining the Union." (Doc. 1, ¶ 15). Thereafter, on September 8, 2023, Zartman terminated Deivert's employment, effective on September 10, 2023. (Doc. 1, ¶ 16). Deivert contends that he "engaged in protected activity of association by attempting to become an active Union Member and by participating in union activities on behalf of the Union." (Doc. 1, ¶ 27). Deivert states that his termination and Zartman's refusal to hire Deivert as a permanent employee was in retaliation for Deivert's collective bargaining activities, not Zartman's reported reason of Deivert's criminal record. (Doc. 1, ¶ 28). Deivert additionally alleges that Defendant, through Zartman, had a policy of retaliating against individuals for Union activities and cites one other example of such an incident. (Doc. 1, ¶¶ 22-24).

On November 28, 2023, Deivert filed his complaint asserting the following Counts: Count I against Zartman in her individual capacity – Violation of the First Amendment

(Retaliation – Freedom of Association) pursuant to 42 U.S.C. § 1983; Count II (*Monell*) against the Borough – Violation of the First Amendment (Retaliation – Freedom of Association) pursuant to 42 U.S.C. § 1983; and Count III against the Borough – Wrongful Discharge in Violation of the Public Policy of the Commonwealth of Pennsylvania Set Forth at 18 Pa. Cons. Stat. §9125. On March 29, 2024, Defendants filed a motion to dismiss the complaint. (Doc. 10). On April 1, 2024, Defendants filed its brief in support of its motion to dismiss. (Doc. 11). On April 10, 2024, Deivert filed a brief in opposition to Defendants' motion to dismiss. (Doc. 12). Accordingly, the motion to dismiss has been fully briefed and is ripe for disposition. (Doc. 10; Doc. 11; Doc. 12).

## II. LEGAL STANDARDS

### A. MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

B. 42 U.S.C. SECTION 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under § 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

**III. DISCUSSION**

Defendants move to dismiss Deivert's complaint in its entirety. (Doc. 11). According to Defendants, Count I should be dismissed because Zartman is entitled to qualified immunity. (Doc. 11, at 4). Next, Defendants contend that Count II should be dismissed because Deivert has not sufficiently alleged that the Borough adopted a policy, procedure, practice, or custom that led to his injuries. (Doc. 11, at 7). Finally, Defendants argue that

Count III should be dismissed because the Borough is immune to liability pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PTCA"). (Doc. 11, at 7-8).

A. COUNT I – QUALIFIED IMMUNITY

Defendants submit that Count I should be dismissed because Zartman is entitled to qualified immunity. (Doc. 11, at 5). Defendants contend that "Plaintiff has not established that any of [Zartman's] official action was taken with any knowledge that [she was] violating Plaintiff's rights, mainly since there was no violation of Plaintiff's rights." (Doc. 11, at 5). In making their argument, Defendants aver that Deivert had no property interest in his job as a probationary employee. (Doc. 11, at 6). Therefore, Defendants could not have violated any law by discharging him. (Doc. 11, at 6). In opposition, Deivert maintains that the law was clearly established as of the date he was fired in September 2023, that it is a constitutional violation to retaliate against individuals in employment decisions for union activity and that a reasonable officer would have been aware of that. (Doc. 12, at 9).

Qualified immunity protects government officials from civil liability "in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Courts consider two prongs when determining whether an official is entitled to qualified immunity: "(1) whether the official violated a constitutional right; and (2) whether the right was clearly established." *McAndrew v. Northumberland Cnty.*, No. 4:22-CV-00834, 2023 WL 408905, at *6 (M.D. Pa. Jan. 25, 2023); *see Davenport v. Borough of Homestead*, 870 F.3d 273, 281 (3d Cir. 2017). A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The Supreme Court has stated that this standard does

not require a case directly on point but requires that 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Andresen v. Pennsylvania*, No. 1:20-CV-989, 2022 WL 3045843, at *3 (M.D. Pa. Aug. 2, 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Relying generally on the text of a constitutional provision to find a clearly established right is not enough. *See Anderson*, 483 U.S. at 639 (defining clearly established as particular and relevant, rather than general violation of a constitutional provision and stating that "if the test of 'clearly established law' were to be applied [...generally...]" it would "convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.") (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). At the motion to dismiss stage, this inquiry is the same. *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) ("[a]t the motion to dismiss stage, federal and state officials are entitled to qualified immunity unless (1) the 'facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation,' and (2) the alleged right was clearly established at the time of the violation.") (quoting *Couden v. Duffy*, 446 F.3d 483, 492 (3d Cir. 2006)).

In the context of union activity, "it is well-established that one cannot retaliate against an individual for exercising his right of expression in his capacity as a union member." *Michalesko v. Freeland Borough*, 18 F. Supp. 3d 609, 623 (M.D. Pa. 2014), *aff'd sub nom. Michalesko v. Borough*, 658 F. App'x 105 (3d Cir. 2016). This protection extends to individuals pursuing affiliation with a union or seeking union membership. *See Mrazek v. Stafford Twp.*, 744 F. App'x 69, 72 (3d Cir. 2018) ("That the rights afforded by the First Amendment protect the pursuit of affiliation with a union is clearly established in law."); *see also Labov v. Lalley*, 809 F.2d 220, 222–23 (3d Cir. 1987) ("Plainly efforts of public employees to associate together

for the purpose of collective bargaining involve associational interests which the first amendment protects from hostile state action.") (citing *Hague v. C.I.O.*, 307 U.S. 496 (1939)).

A state employee need not show that they have a property interest in their job for First Amendment violations related to retaliation for union activity. *See Labov,* 809 F.2d at 222-23. In *Labov v. Lalley*, the Third Circuit reversed a district court's dismissal of plaintiffs' complaints. 809 F.2d 220. The district court had reasoned that plaintiffs could not bring § 1983 claims for First Amendment associational rights violations because the Pennsylvania state law, which gave state workers a property interest in their job "provided sufficient redress." *Labov*, 809 F.2d at 222. In *Labov*, the district court held that complaints "with respect to the exercise of the right to organize a union to bargain collectively" were rooted in procedural due process violations related to the property interest state employees had in their jobs. *Labov*, 809 F.2d at 222. The Third Circuit reversed, holding that the terminated plaintiffs' complaints focused on "the exercise of rights of association protected by the first amendment, [. . . and] that such claims charge intentional substantive violations of federally-protected liberty interests, not random and unauthorized deprivations of state created property interests." *Labov*, 809 F.2d at 222 (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Perry v. Sindermann*, 408 U.S. 593 (1972)). Therefore, a property interest in a job is not required for Plaintiff's Count I retaliation claim and is irrelevant to the qualified immunity analysis. *See Jackson v. Dallas Sch. Dist.*, 954 F. Supp. 2d 304, 313 (M.D. Pa. 2013) (denying a motion to dismiss a First Amendment wrongful termination and unlawful non-selection claim and noting that the parties agree that "according to both the United States Supreme Court and the Third Circuit Court of Appeals, a property interest is not required for the assertion of a First Amendment claim.").

At the motion to dismiss stage, "the defendant has the burden of pleading and proving qualified immunity." *Mitros v. Cooke*, 170 F. Supp. 2d 504, 507 (E.D. Pa. 2001) (citing *Harlow*, 457 U.S. at 815); *see also Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010) ("The burden of establishing entitlement to qualified immunity is on [the defendant]."). Defendants have not met that burden. Here, it was clearly established at the time of the alleged violation in 2023 that individuals have a constitutional right under the First Amendment to attempt to join a union. *See Mrazek*, 744 F. App'x at 72 (holding that efforts to affiliate with a union are clearly established rights under the First Amendment's associational freedom guarantees in 2018); *Trethaway v. Pizano*, No. 3:23-CV-1523, 2024 WL 1468350, at *5 (M.D. Pa. Apr. 4, 2024) (finding that a right to engage in union activities was clearly established for the purposes of violations that allegedly took place in 2022); *Michalesko*, 18 F. Supp. 3d at 623; *see also Thomas*, 88 F.4th at 281 (holding that for qualified immunity purposes, a right must be clearly established at the time of the alleged violation). Second, Deivert's averments that Zartman fired him for engaging in collective bargaining activities are sufficient to show that Zartman violated Deivert's clearly established rights at this stage in the litigation process.[1] (Doc. 1, ¶ 28); *see Trethaway*, 2024 WL 1468350, at *5 (denying qualified immunity to an official who allegedly refused to hire a plaintiff for a full-time position based on his union involvement). Accordingly, Zartman is not entitled to qualified immunity for Deivert's allegations in Count I. Defendants' motion to dismiss Count I on qualified immunity grounds will be **DENIED**.

B. COUNT II – FAILURE TO STATE A *MONELL* CLAIM

[1] As explained *supra*, Plaintiff's property interest in his position does not properly affect the analysis for First Amendment retaliation claims. Therefore, the Court will not opine on Defendants' argument that Plaintiff had no property interest in his job.

Defendants next move to dismiss Count II of Deivert's complaint. (Doc. 11, at 5). Defendants argue that Deivert's *Monell* claim fails because (1) Deivert's rights were not violated because he did not have a property interest in his job and (2) he has not alleged that the Borough maintained a policy or custom that led to a violation of his rights. (Doc. 11, at 7). Deivert responds that (1) a property interest in a state employee's job is not an element of the First Amendment claim that he asserts and (2) he has sufficiently alleged the existence of a policy or custom that caused Deivert's injuries as required for *Monell* liability. (Doc. 12, at 9-13).

In *Monell v. Department of Social Services*, the Supreme Court held that local governments are "persons" and are subject to suit under § 1983. 436 U.S. 658 (1978). The Borough, as a local government, is considered a "person" for purposes of § 1983 liability. *Monell*, 436 U.S. at 690. But such entities may not be held liable in a § 1983 suit for conduct of their employees under a theory of *respondeat superior* liability. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 692); *see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991). Municipal liability only arises when a government causes an employee to violate another's constitutional rights by an official custom or policy. *Monell*, 436 U.S. at 690-94; *see also Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998). To establish liability under *Monell*, a plaintiff must identify the challenged policy or custom, demonstrate proper attribution to the public entity, and show a causal link between the execution of the policy or custom and the injury suffered. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).

A policy exists when a decisionmaker possessing final authority to establish public policy with respect to the disputed action issues an official proclamation, policy, or edict.

*Natale*, 318 F.3d at 584 (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). By contrast, a custom is an act that is not formally approved but is nonetheless "so widespread as to have the force of law." *Natale*, 318 F.3d at 584 (quoting *Bryan Cty.*, 520 U.S. at 404). A plaintiff may also establish municipal liability by demonstrating that a policymaker failed to take affirmative action despite an obvious need to correct the "inadequacy of existing practice [which is] so likely to result in the violation of constitutional rights" that inaction exhibits "deliberate indifference" to the need. *Natale*, 318 F.3d at 584 (quoting *Bryan Cty.*, 520 U.S. at 417-18). Stated differently, a policy of inaction can give rise to municipal liability under § 1983 when the government's failure to act amounts to deliberate indifference towards the plaintiff's constitutional rights. However, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985); *see also Brown v. City of Pittsburgh*, 586 F.3d 263, 292–93 (3d Cir. 2009) (recognizing that where no explicit policy is identified, "'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy"); *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 911 (3d Cir. 1984) ("A policy cannot ordinarily be inferred from a single instance of illegality...."). Thus, a showing that a well-established practice exists, and that the municipality has done nothing to end or change the practice, supports a finding of custom attributable to the municipality.

As discussed *supra*, this Court has already established that whether Deivert had a property interest in his employment is not a relevant analysis for a First Amendment claim. Having found that the facts in the complaint, taken as true for the purpose of a motion to

dismiss, establish a violation of Deivert's rights, the Court next turns to whether Deivert has properly alleged that the Borough maintained a policy, practice, or custom which led to the violation of his rights. *Monell*, 436 U.S. at 690-94.

The complaint sufficiently alleges that a municipal policy, practice, or custom caused or was the moving force behind Deivert's constitutional injuries. As pled, Zartman "was Borough Manager for the Borough of Northumberland and establishes all policies and procedures for personnel hiring, promotion, and terminations within the Borough and on behalf of the Borough." (Doc. 1, ¶ 2). Thus, Deivert has sufficiently pled that Zartman was "a decisionmaker possessing final authority" about the disputed hiring and termination decisions at issue here. (Doc. 1, ¶ 2); *Natale*, 318 F.3d at 584. Accordingly, Zartman's decision to fire Deivert is, for the purposes of a *Monell* claim, an "official policy" and Deivert need not provide additional examples of a practice or custom to satisfy his burden. *See Sturgess v. Negley*, 761 F. Supp. 1089, 1098 (D. Del. 1991) ("Under [§] 1983, 'where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.'") (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

Next, Deivert avers that he was hired by the Borough, and upon belief that his probationary period had ended, he expressed interest in joining the Union. (Doc. 1, ¶¶ 12-15). Deivert alleges that Zartman discovered his attempts to affiliate with the Union and fired Deivert for this reason. (Doc. 1, ¶ 15-16). Deivert further provides that this is not the only instance that the Borough, through its decisionmaker Zartman, has fired employees for exercising their First Amendment associational rights. (Doc. 1, ¶ 22). Having established that Zartman is a final policymaker at this stage in the litigation, Deivert need not provide

additional incidents to show proof of a policy. *Pembaur*, 475 U.S. at 481. However, Deivert still does so, offering at least one other example of the Borough retaliating against another employee for collective bargaining activities, and further alleging that the Borough maintained an openly acrimonious relationship with the Union. (Doc. 1, ¶¶ 14, 22). Under the facts alleged, "Defendant Borough has a policy and procedure of authorizing Defendant Zartman to terminate the employment of employees who seek to join the Union," and Deivert's injuries flowed from such policy. (Doc. 1, ¶ 24); *cf. City of St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1988) (declining to find a policy sufficient for a *Monell* claim when a plaintiff did not "attempt to prove that such retaliation was ever directed against anyone other than himself"). Therefore, Deivert's allegations are sufficient at this stage of litigation to state a plausible § 1983 cause of action pursuant to the First Amendment under *Monell* against the Borough. (Doc. 1, at 6); *see Pembaur*, 475 U.S. at 481 (finding that an official policy exists when a final decisionmaker acting with authority for the local government "caused violation of petitioner's rights"); *Brown*, 586 F.3d at 292–93 (finding that plaintiffs can state a *Monell* claim even where there is explicit policy by alleging more proof of more than one incident of an alleged practice causing an injury). Defendants' motion to dismiss Count II for failure to state a *Monell* claim is **DENIED**.

C. COUNT III – PPSTCA IMMUNITY

Defendants submit that Count III should be dismissed because the Borough is entitled to immunity as to Deivert's state law claim pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"). (Doc. 11, at 5). Defendants do not challenge the sufficiency

of Deivert's claim in Count III on any other grounds.[2] Deivert, in response, avers that the Criminal History Record Information Act, 18 Pa. C.S. § 9101, *et seq*., under which Deivert brings Count III, abrogates any governmental immunity provided by the PPSTCA. (Doc. 12, at 13).

The PPSTCA provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541. There are certain limited exceptions set forth in 42 Pa. C.S.A. § 8542, which provides that local agencies and their employees are liable only for negligent acts falling into one of the following categories: (1) vehicle liability; (2) care, custody or control of personal property; (3) care, custody or control of real property; (4) dangerous conditions of trees, traffic controls, or street lights; (5) dangerous conditions of utility services facilities; (6) dangerous conditions of streets; (7) dangerous conditions of sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse. *See* 18 Pa. Cons. Stat. § 8542.

Here, while Deivert admits that none of the eight exceptions to the PSTCA apply, he argues that the CHRIA "clearly, and by its express terms, abrogates any governmental

---

[2] Because Defendants do not challenge Count III on any grounds besides immunity, the Court will not opine on the sufficiency of Plaintiff's allegations regarding the elements of a CHRIA claim. However, given that this Court has previously held that CHRIA applies only to hiring decisions and is not applicable to termination decisions, the Court has serious doubts about this claim's merits to the extent that Count III is a wrongful termination claim, rather than a claim based upon non-selection and related to the Borough's decision not to hire Deivert full-time after completion of the probationary period. *See Martin v. SIMOS*, No. 3:17CV589, 2017 WL 2346131, at *4 (M.D. Pa. May 30, 2017) ("the CHRIA prohibits employers from arbitrarily relying on a job applicant's criminal history record information during the hiring process. The statute is silent regarding use of criminal history information for purposes of terminating an employee.") (citing 18 Pa. Cons. Stat. § 9125; *McCorkle v. Schenker Logistics, Inc.*, No. 1:13-CV-3077, 2014 WL 5020598 at *4 (M.D. Pa. Oct. 8, 2014)).

immunity with respect to suits for damages for violations of the Act under 18 Pa. [Cons. Stat.] § 9183(b)." (Doc. 12, at 13). This Court agrees. In *Taha v. Bucks County*, the Eastern District of Pennsylvania considered the relationship between the CHRIA and governmental immunity under PPSTCA. No. CIV.A. 12-6867, 2014 WL 695205, at *8 (E.D. Pa. Feb. 21, 2014). The *Taha* court determined that the CHRIA's "damages remedy constitutes a waiver of governmental immunity." *Taha*, 2014 WL 695205, at *8. The court reasoned (1) that the CHRIA largely applies to government entities, and allowing the PPSTCA to bar suits authorized by the statute would contravene the purposes of the CHRIA, and (2) that several Pennsylvania state courts have held or assumed the same. *See Taha*, 2014 WL 695205, at *8 ("Taking into account this legal landscape, and the structure and content of the CHRIA, I predict that the Pennsylvania Supreme Court would hold that the statute demonstrates a clear legislative intent to hold government entities liable for damages for violation of [the CHRIA].").

Pennsylvania state courts and other courts in this Circuit have come to the same conclusion or have otherwise suggested that the CHRIA may abrogate governmental immunity. *See Haron v. Pennsylvania State Police*, 171 A.3d 344, 354 (Pa. Commw. Ct. 2017), *aff'd,* 188 A.3d 1121 (Pa. 2018) (finding that a plaintiff "is entitled to recover actual and real damages" under CHRIA against a government entity); *see also Rosiji v. City of Philadelphia*, No. CIV.A. 11-6469, 2012 WL 1646726 (E.D. Pa. May 9, 2012) (allowing a damages suit against a government agency and asserted under CHRIA to proceed past the motion to dismiss stage); *cf. Hunt v. Pennsylvania State Police*, 983 A.2d 627, 639 (Pa. 2009) (finding that with respect to § 9183, as it applies to governmental entities, it is "plain from a reading of the statute, by its

terms, CHRIA provides for the possibility of actual and real damages."). Accordingly, Defendants' motion to dismiss Count III on governmental immunity grounds is **DENIED.**

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**. (Doc. 10). An appropriate Order follows.

**BY THE COURT:**

**Dated: January 13, 2025**

s/ Karoline Mehalchick
**KAROLINE MEHALCHICK**
**United States District Judge**